And the next case is Slagley v. Slagley. And is it Mr. Malone? Malone? Okay. And Mr. Harvey? Okay. Mr. Malone, when you are ready, please proceed. May it please the court and counsel, my name is Gary Malone. I'm here today representing Douglas Slagley. We are here today because Douglas Slagley and now Jennifer O'Daniel have been married at one time and have a child together. And through divorce, the parties are both now since remarried. Jennifer O'Daniel filed a petition for adoption, seeking to adopt or for the new husband to adopt the minor child. We, uh, Mr. Slagley responded to the amended petition for adoption and filed a determent. The trial court judge essentially ruled that anything that occurred prior to the time period in question was not going to be allowed at the fitness hearing. The time period in question started December 15, 2005 and ran to December 15, 2006, basically, for failure to communicate. And that is what the petition is. What I'd like to talk about this morning in chief is the fact that litigants come to the court system, they're seeking justice, they're searching for the truth. And a large part of the system is seeking the truth. So in a situation like this, what it comes down to, as laid out in the pleadings and in the briefs, Mr. Slagley is basically contending that due to conduct by the mother and her husband prior to December 15, 2006, that he ceased his efforts to communicate for business. The mother is contending that what occurred prior to December 15, 2005 should not be considered by the court in determining unfitness. Mr. Slagley disagrees with that, obviously, and the position is that what occurred prior to December 15, 2005 that led to a cessation of communication is extremely important on the issue of unfitness. The statute in question gives little guidance, the case law under the statute gives little guidance in a situation like this. The statute does not say that you cannot bring forth evidence that occurred prior to that window of time. The mother in the case asserts that the statute is essentially clear that it says subjective intent, in this case the father is not a factor, indicates that if there's nothing that occurs in that window of time from December 15, 2005 to December 15, 2006, if there's nothing alleged during that time period, then you cannot bring it up. To do that in a case such as this deprives Mr. Slagley and anyone else in that type of situation from discussing or bringing forward at the unfitness stage alleged bad conduct of the other parent that contributed to the cessation of communication. He wasn't precluded in the unfitness stage from bringing this up, was he? In the unfitness stage? He is precluded in the unfitness stage. Not in the best interest, I apologize. My term's mixed up. The trial judge indicated that this type of information would be appropriate at the best interest hearing. There's no question we're dealing with a two-prong scenario here where we first determine fitness, run fitness, and then move on to the best interest standard. It's argued that since this information or these allegations could be brought up at the best interest standard test or case, that Mr. Slagley essentially has preserved for him these arguments that would potentially defeat the termination of criminal rights. That alone is an interesting issue. When you look at cases across the board that discuss families and children, you read about the best interest everywhere you look. That's the primary objective. That's the primary function. It's the primary theory that's discussed until you land into a case like this that says, well, now we're not interested in the best interest at this point. We may be later, but we're not right now. So that is an interesting dichotomy in and of itself. I think the crux of the matter here is how do we search for the truth of all the factors that existed prior to December 15, 2005, if we don't want to hear about it? And that's what is very problematic. It doesn't make a lot of sense to say in an adoption case that we're going to look at a parent's past conduct, but only so far, only when we go so far back, we don't want to hear anything before that certain time period. It's inconsistent with the scheme of adoption. It's inconsistent with a litigant being allowed to search for the truth and present their side of the story. In this case, it precludes Mr. Slackley at the unfitness portion of the hearing to explain his conduct. We suggest that's not fair. It's not supported by the statute. The statute is written, doesn't provide clear direction. We're asking this court to interpret the statute in a manner that promotes a search for the truth, in a manner that allows the litigant to present his version of why he did what he did, and not to divest that person, in this case Mr. Slackley, from promoting that search for the truth. Why would it prejudice litigants in a case like this to have the full truth fleshed out at the unfitness hearing? Is it a matter of expediency that we're going to sacrifice the search for the truth for expediency? That's about the only way you can look at a situation like this and make sense of it. Because otherwise, there is no sense or no logic that would justify her taking that search. And especially when the allegations consist of alleged bad conduct of the other parent. Then it's a double problem for the litigant, for Mr. Slackley here. That's just allowing someone to bootstrap themselves into a situation by performing bad acts to stop the other parent from communicating with the child. And then based upon that non-communication, proceed with the petition for adoption and be able to stop the other parent from talking about it. That doesn't make any sense in the law. It lies in the face of everything that we try to do in the judicial system to bring forth the truth, advance the truth, get the facts out there. So the trial judge has a complete picture of what was occurring as the situation developed. So I'm suggesting that the statute needs to be read in a manner that does promote that process. And that does promote this search for the truth. And it clearly serves better the ends of justice by allowing that to occur. Rather than just take a blanket approach and say, we don't want to hear that. That occurred prior to that one-year window starting and it has no relevance here at the Young Fitness Court. Clearly, if that evidence or if that information was presented at the Young Fitness hearing, and the trial court believed that due to those factors that that explained and was a reasonable basis for the conduct, and because of that held that that particular parent here, Mr. Slackley, was not unfit, that would terminate the case. So it actually serves the ends of justice in that respect as well. So I would ask this court to look at those principles and rule that the trial judge made an error when he precluded Mr. Slackley from presenting that information at the fitness hearing. Okay, thank you. Mr. Harvey? Thank you, Your Honor. May it please the court, counsel. Judge, with all due respect, this case is pretty simple. This is a case where you have to look at the plain language in the statute and decide, as the trial judge decided, whether it means what it clearly says. In order to do that, you have to look at the facts of how this case arose. We filed an amended petition for adoption in which we allege, as a ground of unfitness, that the father, Mr. Slackley, had, pursuant to Section D1N of the Adoption Act, evidenced intent to forego his parental rights as manifested by his failure to communicate for a period of 12 months. Period. That's what the law says. The 12 months that we clearly allege commenced December 15, 2005. Now, counsel alleges, as an affirmative defense, all sorts of bad acts which he says occurred that arose out of conduct of my clients. But the last of those bad acts were May 18, 2005. There is no allegation of any fact, of any conduct, of Bill and of Jennifer O'Daniel, that he says in any way interfered with his client's ability to do anything with his child for seven months prior to the cessation of communication. That's one of those facts he didn't bother to mention to you, either in his brief, or in his reply brief, or in his oral argument. But the trial court was aware of it. Now, the statute also says, and carries with it presumption, that he is able to communicate unless he can present evidence as to why he wasn't. The communication period, and if you look at what we've alleged in the petition, the communication period began December 15 and extended, frankly, through the filing of the amendment petition, which was in March of 2010. It's four and a quarter years of no communication. That's what's alleged in the petition. Now, the fact of the business is, he alleges nothing that happened in that four and a quarter year period that would have compromised his being able to communicate. He chose not to. Now, oddly enough, the statute addresses that. What the statute says is that, and I quote from it, the subjective intent of the parent, whether expressed or otherwise, and there's no claim that that intent was ever expressed in this case, but the subjective intent of a parent, whether expressed or otherwise, unsupported by evidence of the foregoing parental acts, that is, communication, visitation, the kinds of things considered, do not preclude a finding of unfitness. So all he has done in his argument to you in his briefs today is to say, no, we didn't communicate. No, there's no fact during the period of noncommunication, which we have alleged, which prevented us from communicating. Yes, we had this unspoken subjective intent about why we didn't communicate, but we didn't accompany that intent with any of the acts the statute requires in order to preclude your finding of unfitness. Effectively, what you're being asked to do is to ignore the language of the statute and effectively to rewrite it. That's what you're being asked to do by Doug in this appeal. Now, the other thing that Doug ignores throughout this case is the nature of the termination process. The nature of the termination process is twofold. First, there has to, in the first instance, be a finding of unfitness. That's what Subsection N of the Adoption Act addresses in terms of the grounds of unfitness. The courts, and you've seen our briefs, you've seen Judge Foster's order in which he cites these cases, starting with the Supreme Court's decision. In the sick case, it says very specifically that this is a bifurcated process. And I can't say it better than the Supreme Court said it in the sick case in which they said, we declare that when a petition for adoption alleges that a parent is unfit, aggregating the need for that parent's consent to adoption, the trial court is initially to determine parental unfitness, basing that determination on any evidence relevant to the particular ground of unfitness. The sick case says, the Illinois Supreme Court in the sick case says, the initial hearing on fitness, the evidence is limited to the grounds of unfitness. Now, that's not something that Judge Foster made up, or that we made up. We simply cited the Illinois Supreme Court. The Illinois Supreme Court in the case of N. Ray D.T. that we've cited says the same thing. But I think it's interesting to look at this court's decision addressing that same issue. In the case of N. Ray, M.P., L.P., and C.P. Because in that case, the trial judge did what counsel has just suggested to you should happen in this case. The trial judge said, you know, and the interesting thing about this is the trial judge pretty well acknowledged he was doing it. And I would ask the court to look at the language of this court's decision at 324 L.F. 3694, because it's instructive. Cited N. Ray. What this court says, after reviewing the record before us, we conclude that the trial court was required to apply the two-step process by which a court must consider the parent's, must number one, consider the parent's unfitness, number two, consider the minor's best interest. This court commented that the trial court itself acknowledged that the facts of the case that was being decided there really did fit a ground of unfitness. But nevertheless, the trial judge said, well, yeah, maybe he's unfit, but he's tried to be a good guy after he was passed the test of unfitness, so maybe I won't find him unfit. This court reversed that. For precisely the reason, cited the SID case, but for precisely the reason in SID, first phase, the evidence is limited to the grounds of unfitness. The grounds of unfitness in this case is really simple. Beginning with December 15, 2005, did Doug evidence his intent to forego his parental rights by refusing, failing to communicate with the child for a period of at least 12 months. Now, the presumption is that he did. Obviously, if something arose during the 12-month period to prevent such communication, it's a very simple matter for him to say, well, you know, when I was trying to communicate with him, they did this to me, they did that to me, they did something else to me. They kept me from communicating with the child from December 15th to whenever. None of that is in the affirmative defense. We see some frankly rather bizarre claims of hypothetical situations in the brief in this case. When you're asked to say, well, what would happen if Doug had been a prisoner of war? Or what would happen if Doug had been in a coma? Or what would happen if some other thing had taken place? Well, what would happen would simply be this. Doug would file an affirmative defense and say, I couldn't communicate after December 15th, 2005 because I was a prisoner of war. Or because I was in a coma. Or because any of these other hypotheticals that are raised, because they would have themselves prevented the communication during the period when the communication took place and would be a rebuttal to the presumption of ability. And none of those pleadings were filed. Now, the thing that's being missed and the blur that's being made here is the trial court's ruling was very narrow. Because the issue before the trial court is, are the claim bad acts before the period of non-communication a defense to fitness? I think the law is clear that they are not. The trial court did not preclude consideration of those things at the best interest stage. Because termination is a two-stage process. It's best interest. And fitness. So once fitness is determined, when we have a burden of proof on fitness by clear and convincing evidence, we then go to the best interest. Now, if it's Doug's position that any of these things have somehow affected the child in some way that ought to be considered by the court, the court didn't preclude those things from coming in. But the statute is very clear as to what comes in on fitness and what may come in on fitness is pretty narrowly determined. You haven't heard any argument in this case. You haven't seen any citation of authority in any brief submitted by Doug that's different than that. The most that you see is Doug's attempts, frankly, to continue to do what this court has already held he can't do, and that's commingling the two. Let me go back to the bizarre hypotheticals. Because sometimes we try to see what, if we rule one way out, we'll be applied down the road. I see your point on the, you know, being a prisoner of war or at Menard State Penitentiary, you're there, you got it. What if, you know, six months before the 12-month period starts, somebody tells the father or the mother, I'm going to shoot you if you come back here. I'm going to shoot you in the head, I'm going to kill you. You come back here. And now the guy or the gal, whoever it is, that's her reason for not coming up. Now, she or he was not threatened during the 12-month period, and they didn't come back and take any chance on getting shot. Would that be admissible? On fitness, I don't think it would. Clearly, it would be a matter that may affect the best interest of the child for termination. Now, Judge, there's... I know we go to these extremes. I guess the point I would make about that, if somebody told me that they were going to shoot me, if I went to see my child, it would take me about five minutes to get to the sheriff's office. Well, that's you. I know, but I mean, that would probably be most of us. But the only thing I've got, your position is that no matter what it is, if it didn't occur within the 12-month period, it's not admissible. I can see where the trial judge here may have said, well, that was too remote, or that is not relevant. That is not coming in. Now, but you're... are you going for the full boat here? Well, I don't have to go for the full boat here because it doesn't address the issue in this case. I would refer the court to what the Supreme Court in D.L. said. D.L. decided in subsection M, which is the section right above this, which is the section that deals with grounds of unfitness or the party not making reasonable efforts after an adjudication of abuse or neglect to get the child back. And that was what D.L. said. But D.L. commented on time limits in the various sections of the Adoption Act. And we've discussed that in the brief. But the court says when the legislature put time limits on some of these things, that's important. And the time limits are there for a reason. And the enacting by the legislature of section 20A of the Adoption Act emphasizes the importance of the time limits. But his state of mind was during the time limits. His state of mind, his explanation as to why he didn't visit the child is within that 12-month period, but his state of mind is based on something that occurred outside the 12-month period. Well, Judge, we don't know that because his state of mind basically isn't alleged in the affirmative defense in the first place. Second place, there's no allegation of the rather extreme situation that you posit. The allegation was that there were repeating incidents where somehow or the other they messed with his visitation. The important part that your hypothetical omits is that there were seven months from the last event that he alleges to the time communication ceased. What happened in the seven months? Now, it's not like, you know, they go to him and say, all right, what you said, if you show up, we're going to blow your brains out, and he immediately quit. He went ahead and communicated for seven months after that. Well, I don't disagree with you on that, but that's a different point than excluding it just because the statute says. Well, and I don't think we're... That's, I mean... I guess, and I understand your point, Judge, but that's not the point that Judge Foster was faced with here. Right, I see. Judge Foster's face with here is just this. The seven months are important because you can't look at the pleadings and conclude that there was a lack of communication from May 18th to December 15th. If there had been, we would have alleged May 18th. And so the statute is very clear, and all you have to do is to do what you're required to do, which is apply the statute in an important way. Thank you. Any rebuttal? Yes, Your Honor. Your Honor, as I would like to point out, in the amended affirmative defense, Judge Lackley does allege that the continued contentious and aggressive behavior of Jennifer and William O'Daniel because of that, Judge Lackley believed it would be in the best interest of his son that he not continue his visitation. He feared to do otherwise would put his son in the middle of future confrontations initiated by Jennifer and William O'Daniel. The... The query that the court posed presents and frames the problem that we see with the way that Jennifer is trying to have this court approve the statute. Because if that were the case, that's, we contend it does create absurd results. It's just difficult to believe that the statute was created in such a way that that would be the end result, that you would have something like that occur, and the parent who was the victim of that, along with the child perhaps, is not allowed to present that at the fitness portion of the hearing. We just submit that's not what was intended. We submit that it does create absurd results and would request that this court interpret the statute, which is, by the way, not that clear because if you look at Judge Foster's ruling in March 2011, he actually, at that point, didn't say whether it would or would not be admissible. He said whether it's admissible or whether it's not admissible, the motion to strike is denied. So, it's not a clear-cut situation. There's no authority that tells us what the true answer is. And so, Doug Slagman is here asking this court to look at the statute, look at those kinds of scenarios which are not to be ignored, because that does have an impact on how the statute would be interpreted by other courts in the future. And so, we would respectfully ask this court to reverse the order of the trial and to write that the allegations pertaining to the amended term of defense be allowed at the fitness stage of this proceeding. Thank you. Okay. Thank you to both of you for your briefs and argument. We'll provide you with a decision on the earliest possible date.